This is the Yes. For the fourth. All right. I think we're ready to begin Mr gosh. May it please the court. I am Matthew Dodge and I represent Jeffrey Beaman. We have two issues that we presented to this court. First is whether or not Mr Beaman has met his burden of presenting a Johnson claim in the district court. The second issue has been the topic of much discussion already this morning and I'll begin there. It is time for this court to redline the Georgia aggravated assault statute from the last year. Let's let's talk about the first issue first. Let me try to really quickly tell you how I see it now having not had the benefit of your oral argument. I think I think your client asserted a Johnson claim, but I don't think your client has proved a basis for relief under the Johnson claim. I think the only thing he can get relief for is for a violation of Johnson. I think any other violation he shows is time barred. Insofar as relief under Johnson is concerned, I think he has to have shown on the record that in fact, but for the residual clause, he would not be subject to this extra imprisonment. And I don't think he has shown that in fact. So that's that's my concern at the very front end. And if my concern could not be satisfied, at least my own vote would be. We don't get to explore in this particular case, the various elements of aggravated assault and so forth. So I lay that on your heart for whatever it's worth. Judge Edmondson, I appreciate the window into your views at this point, and I will address them directly. What you have set forth is as your view at the moment is very similar to what the panel in In re more articulated a year ago in an order granting that gentleman's second or successive application. And Judge Carnes was on that more panel. I urge this panel to reconsider those views that you've articulated here. Judge Edmondson, to ask a movement under Section 2255 to peer back in time into a record that is silent in which the district court did not speak. The words residual clause is asking too much. That path would be unworkable both in practice and in principle. Is it? Let me first of all say to you, occasionally we see with the words, you have not used them today, a magic words kind of test. I reject that. Direct evidence through magic words would be great for your client if you had that. But you don't, and maybe nobody does. I don't know. But there would also be, I think, at least one mechanism circumstantially to show that your client or some client was sentenced pursuant to the residual clause. And that would be to show that at the time of sentencing, and I do think at the time of sentencing is a very important idea here. At the time of sentencing, your reasonable, ordinary Article III judge, it would have been obvious to that person that no other clause could have applied but the residual clause. And that would be available to anybody to attempt to show. It wouldn't depend upon whether it was 30 years ago or whether the transcript was lost or anything else. So I put that in the mix too for what it's worth. What I find to be most important here is that at the time of these sentences, in years past, district judges were not required to declare the path that they chose to apply the enhancement. There were several options available to every district judge up until Johnson, including the elements clause and the residual clause. It didn't matter which clause applied. The courts were not required by law to say either of them out loud. All paths led to the top of the ACCA mountain. That all changed. But if the defendant had some qualms about whether or not the ACCA clause applied, that defendant could certainly appeal on one or both grounds. And that's what we generally expect defendants to do if they have a disagreement with a judge's ruling, do we not? Yes, that's right. And in some Johnson cases, not this one, the government has offered that defense that you've articulated a procedural default. However, it has not offered that defense here and it shouldn't. We are permitted… I'm not stating this in terms of procedural default, but you say that the defendant is without any ability to do things. There was no objection at the time, so he could have done that had there been any problem. Well, that's right. At the time… I'm suggesting defense counsel perceived no problem with imposition of the ACCA. Well, that's because the residual clause was alive and well. A defense counsel standing in a sentencing hearing in 2010 would find any objection to the elements clause to be meaningless because the backup plan, the safety net for the government and the district court was the residual clause, a net that was far wider and captured many more predicates than the elements clause alone would have. And I think the panel in chance here and my colleague in the Southern District, Judge Mara, said that to put the onus on a defendant to raise what would have then been considered frivolous matters that had no basis in law and proliferate appeals is unworkable, which is the reason why I think that that's your argument that we're in the posture here today of revealing Mr. Beaman under the Johnson analysis. Is that… That's precisely right, Judge Williams. We embrace the chance exercise, the chance path that was proposed a week after the panel and more. And… Yes, sir. No, I mean, I need to take advantage of what you're going to tell me. So you speak some more. Yes, sir. And I will actually listen to what you're saying. Yes, sir. Okay. So I've covered the practical problems with this path of… It's a practical problem for your client. But if it's what you're saying is there's a chance the residual clause was used, that means there's a chance it wasn't used. Or that means there's a chance that the elements clause was used. Or it means there's a chance that the judge says both of them comply. And if that's so, we know that if the judge was considering the elements clause, you're out of court. Because the elements clause, there was no discamps back then. There was no reason to believe that wouldn't be there. And so given equal probabilities, if not maybe a greater probability in 2009 that the elements clause was actually the one used, do you know of any case authority in 2255 litigation where we've ever told the movement, look, you can't really prove your claim, but it's too hard, so we're going to give you a bye? I'm not aware of any case law like that. Well, neither am I, Judge Carnes. But that isn't the actual question that we have in front of us at the moment. We can't be required to prove our claim before entering the door to present that claim. All that we're asking through this path that's articulated well by the panel and Chance is that we be allowed to enter the door. The question that Chance raises is what happens in a silent record, because then we know that there may have been an implicated residual clause enhancement. If that's all that we can prove, that's all that we ought to be able to, ought to be required to show, and that's enough. That there might, that it might have been. Yes. Yes, Judge Carnes. Because I just, you know, this may be the law of the United States, but I'll have to be ordered to that. Otherwise, what you're doing is you're overturning convictions with no one saying, well, we know, and by know I mean more likely than not. First of all, when I talk about show me the residual clause as the basis, I'm not talking about show me, show any judge. In the true absolute sense, I'm talking about more likely than not. It's an evidentiary statement. More likely than not that the residual clause is what underpins this. I don't think, and I say this with heartfelt respect, I don't think you come close to showing that. And if you don't show that, then all that you're saying is it could have been bad. I don't think that's the basis for habeas corpus relief. I really, I really don't. What am I missing? What am I missing? Well, Judge Edmondson, I believe you're conflating the two questions, which is have we shown that our sentence may have been affected by the residual clause, which is first. And second, on the merits of this predicate. Now, today, in 2017, does this predicate fit the elements clause? And if it does, we lose. So we're not asking. Oh, no, no. No, because you lose on the elements clause because of statute of limitations, period. You might have to show that the elements clause could not apply in order to avoid a harmless error argument by somebody else. But I don't understand, I do not understand the argument of how you can get relief under anything other than the residual clause pursuant to Johnson. And everything else seems time-barred. I would ask the presiding judge to give you two minutes to tell me, judge, you're just missing the whole thing. She will. Well, Judge Edmondson, I don't stand alone on this view. The panel and chance, the unanimous bill. I love and respect. You understand. I do. I presume. The panel and chance said it far better than I can. It offered the first flaw in the reasoning that you're proffering, Judge Edmondson, which is it's not workable or practical because the law didn't require a judge to speak out loud the source. Secondly, it creates, in principle, arbitrary results. It means that defendants today, in pressing their Johnson claims, their fate is beholden to the fluke of fate. Whether or not the district court in some long-ago sentencing hearing made a decision explicitly on the residual clause. No, it doesn't. Because I explained to you how it doesn't have to be like that. And I'm pretty sure. Am I wrong about that? That there are ways to show circumstantially, hypothetically at least, circumstantially, that the sentence had to rely upon the residual clause. The only circumstantial evidence that could have supported us going back in time and putting ourselves in those shoes of the judge at the time is if there was a binding 11th Circuit case on topic. For example, if the Georgia aggravated assault statute had been found to be a violent felony under the elements clause at the time of Mr. Beeman's sentencing hearing, then we would have no real argument here in response. But the fact is, not only was this court's jurisprudence silent on that question at the time, but the district court below did not tell us what he was thinking. And that silence alone leads to arbitrary results. As I said, the chance panel offered a compelling hypothetical that illustrated this risk. Imagine a district judge on a given afternoon. She has two ACCA cases in front of her for sentencing. In the first case, she imposes the sentence based on a crime that we now know as residual clause, but not knowing that years later we'd be combing through the record looking for these words from her. She didn't speak those words. The next hearing, with the same predicate, the same residual clause, she spoke those words out loud and told us what she was thinking. Years later now, only the second defendant would receive the key to the door to press his Johnson claim. The first would not. And why is that? That's because in one case, there was evidence of error. And in the other case, there was no evidence of error. Is that right? Well, I disagree. There was evidence of error in the first case because without an explicit declaration that some other clause was the source of that enhancement, then we can presume that it may have been the now forbidden residual clause. Well, the difference between the two cases I suggest to you is in one case, there was sufficient evidence to show a violation. And in the other case, there was insufficient evidence. And so the results are different. It is not startling to me, Counselor, that when the facts change in individual cases, the results change. Mr. Dodge, let me ask you to think about this when you come back, which is assume when you come back that we are going to rule, I'm just saying assume, a rule that you must make a showing, that saying it's possible could be 50-50, we'll not get it done. And if that is so, I'd like you to think about how you would respond to us if you can, what arguments you would make to suggest, given the state of the law in 2009, that it was unlikely that the elements clause, that it was likely that the residual clause was used, more likely than not, or by probability of evidence, unlikely that the elements clause was used. So you could respond when you stand back up again. I will do so. Thank you. Thank you. Once again, may it please the Court. Again, my name is Larry Sommerfeld, and I remain honored to represent the United States. Defendant's elements clause claim is untimely, and in our view, he doesn't set forth a Johnson claim. But before we get there, I just want to see where we are procedurally. I'd like to take a minute or two. This case is not Moore and is not Chance. Moore and Chance arose in the context of a second or successive application. That's required to undergo examination under 28 U.S.C. 2255, subsection H, that there be a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable. But what's important about that is that review has to be undertaken by this Court within 30 days, on a very limited record, without hearing from one of the parties, and it's made on a prima facie basis. Once this Court does so, it goes down to the district court, which has more of a record, but again, has to make the same determination of this 2255H. We're not there. This isn't a second or successive petition. This is a first petition, and one major difference is that 2255H is jurisdictional. So under Moore and Chance, the Court has to find out if it has jurisdiction. Here, we're merely talking timeliness. That is a procedural barrier. We have raised it. If it's untimely, it should be dismissed. But again, the Court could decide it on alternative grounds. It's not an issue of jurisdiction. The issue here under 2255F3, because we know this is more than a year from when his conviction became final, so it can't fit into F1. The other ones don't apply. So he's trying to get his petition to be timely by saying it was filed within a year of the date on which the right asserted was initially recognized by the Supreme Court, if it's a newly recognized right made retroactive. So the right asserted. And our argument is that the right asserted here isn't the Johnson right. His entire 2255 motion is an elements clause issue. Actually, his entire 2255 motion, he raised an enumerated clause issue, which is interesting. It doesn't apply here. But in reply, he raised the elements clause. Neither one are affected by Johnson. Johnson explicitly doesn't affect those. Now, again, our posture here is of a— It affects the residual clause. It affects solely the residual clause. So if the residual clause wasn't applied or was not applicable to Mr. Beeman's conviction, then all that it would rest upon would be the elements clause. In this case, yes. And Johnson tells us the residual clause not to be considered as an appropriate predicate. So I guess I'm not understanding what that argument is. The argument is he has a final— It's one of those attractive arguments, but I don't know if it gets me to where we really need to be. I understand. I understand that this is a final conviction. It's a final judgment. Controlling case law says defendant has the burden everywhere here. We're going to reopen a final judgment. He has to show that the right asserted was within a year. And Moore is a straightforward application of congressional statute and this Court's precedence of burden saying defendant hasn't met his burden, where he hasn't shown us— In Ray Moore? In Ray Moore. I thought you told us let's go away from that. Well, it's not Moore and Chance, but when you're looking at this, it's related. He made an argument based on the rationale of Moore and the rationale of Chance. And so undertaking that, a similar rule here that says that he has not borne his burden to show that the date on which the right was asserted, within a year of that date, he filed his 2255. Straightforward application, just like Moore did in the other context, would say he's not—he has the burden. He hasn't shown it. And it's true here. We can see that in two ways, and then I know Chance tries to make a distinction, but there are two ways. One, his actual—look at the case before us, Morales-Alonzo. Identical elements clause claim and doesn't mention Johnson. It doesn't mention Johnson because under that sentencing guideline, there's no residual clause. Fact is, it's the same argument. The residual clause has nothing to do with this argument. And it's also made by his reply brief in this case. I don't—I've enjoyed listening from both of you lawyers. You know what you're talking about. But I don't understand why you're arguing this case the way you are. The petitioner, in order to get relief, would have to show that he's entitled to relief per Johnson. That's correct, right? Yes. And Johnson only. That's our view. Okay. In order—and this is a case in which the sentencing judge did not make some pronouncement from the bench in which he's saying, I don't think anything else applies here, but I think the residual clause does, so I'm going to use that. We don't have language like that in the record, right? Correct. Okay. So it seems to me that a petitioner in a case like that would have to go—would have to show, would have to talk about the other clauses, I mean enumeration clauses and so forth, because what they would want to be saying is they could not apply. And at the time of my sentencing, reasonable judges knew that those would not apply, and therefore we can infer that the residual clause would apply. So the fact that they're arguing these other clauses, that never bothers me. I don't think those arguments are carrying the day because I think at the time of sentencing, they can't show that judges knew they wouldn't apply. But I think that would be the framework you would advance. You just don't get relief on that. Am I communicating with you? I don't really understand what the significance of that he argued the enumeration clause is. I don't hold that against him for arguing it. Nor do I. I'm just saying his claim is really an elements clause claim. And it's not a floodgates issue either, is it? Because where the sentencing court said specifically that I'm sentencing under the elements clause, then Johnson is not implicated, nobody gets anywhere. If the sentencing court said I'm sentencing under the residual clause, Johnson is implicated, and there we go. Here we are talking about where a record in a court is silent as to why it is sentencing. Then I think the law gives the defendant the capacity to say it is implicated in Johnson because of the silence of the record. I think Judge Edmondson is suggesting, and I think he's been asking, are there standards whereby reasonable inferences can be made that would be equal, the equivalent of the finding that the elements clause was my predicate. But if the record is silent, then would you agree that this is a Johnson issue? No, but I think our view of the record is more expansive than what you're suggesting or with respect to even Judge Edmondson is suggesting. And I think this gets to the first point of chance. Chance makes two points, as my colleague pointed out. First, it suggests it's a magic words issue, that it is a matter of whether the sentencing court said residual clause or not. Secondly, it says Moore's unworkable. We think both of those are incorrect. And because we don't think this is a magic words issue on part of the sentencing judge, what we're suggesting is that the court take a fair reading of the record as a whole. Did the defendant make an objection to the PSR? Did he file a sentencing memorandum? What did he say at sentencing and what did the court say at sentencing? What did he say on appeal? What, not only on the record, what was the law at that time? Did the 11th Circuit or any of the district courts address this issue under the rubric of the residual clause? If those facts are in the record, if that was the state of the law, then we think there may be a circumstantial case that the defense can make that the residual clause was at issue in his sentencing. I'm going to try and understand what you said because it's not a magic words case. It is at least in principle possible to show this, the United States says, circumstantially. Yes. And we would submit that to do what chance suggests and what the defense suggests here is to make it a magic words case the other way. So long as in his 2255 motion, the defense, the defendant utters the word Johnson, it opens the floodgates for all sorts of decisions, according to the defendant, which he has timed out on, which he did not exercise his appropriate diligence. But we know now, I mean, that that argument was brought up in the first, the first set of Johnson that it would open the floodgates because everyone would claim Johnson. And and and some of the people I sentenced did. And, you know, it was aggravated identity theft. So people in the system knew Johnson was there, but they were easily winnowed out. I don't think that is the situation here. I'm going to respectfully disagree. This court at eighteen hundred second or successive petitions. We had hundreds of Johnson purported 2255. We still have scores remaining and it's over a year after Johnson. We're sitting here arguing whether when a guy shoots somebody else, it's a crime of violence. But when he picks up a brick and throws it at somebody else to injure, it's a crime of violence. No, we're we're arguing about whether the Supreme Court gave us a standard that said despite the conduct, you look to the statute and you look to whether or not the elements conform to the conviction in question. We're not talking about how bad things are, how much work we've got going on or, you know, who who is then upset by the brick or was killed with the gun. I don't disagree, Dr. Riley. But when you said floodgates question, I do think it relates to the work that's going on. And to have a defendant simply under the word Johnson and then undergo this whenever a defendant just puts in their 225 motion, Johnson, for example, you have two defendants similarly situated. One files his 2255 motion, makes the same elements clause arguments we hear today, doesn't say the word Johnson. We don't reach it. It's untimely, according to the defense and chance. The other one has the same thing, but says Johnson. Now we have to undergo the entire analysis, according to the defense. It's a magic word from the defendant that it turns. I thought it was the magic words from the Supreme Court. I could be wrong on that. I don't that's I don't believe the Supreme Court. I understand in terms of the impact, which we don't decide cases based on the impact would be if we rule with a defendant on this case. Every defendant sentenced under the ACC, ACCA, who says the word Johnson gets a redo on on their sentence. That's how it appears. The only. No, because because if they said Johnson and the court said I sentenced you under the elements clause, well, then you're done. True. As the defense points out, that's not the typical case. And what we're suggesting is you look at the record as a whole, not just what the sentencing court said to take a fair view of the record as a whole. Frankly, it's analogous to the plain error circumstance. That's why it's not unworkable. We're used to that on appeal. We take a look at the record as a whole and see if the defendant fairly raised the issue below. Same thing here. So you're adopting the United States versus Smith analysis here. The plain error of not challenging the PSI or is that a different. No, I'm just drawing an analogy. When Chance said that this view is unworkable and more, we're drawing the analogy that when you view the record as a whole, it's sentencing to see if somebody raised an issue. It's something that this court does a fair amount of the time and it's not unworkable at all. So that's that's our view. In fact, I'll point to a case. The defense cites a case called Wolf and within Wolf, it cites Harris. And it says that as a general rule, the defendant has the burden of proof in a Section 2255 proceeding. But the burden should remain with the government in establishing that a conviction qualifies as an act offense. Well, that's not what the controlling authority in the 11th Circuit says, and that's not how Congress wrote the statute. So we suggest that this court follow the wording of the statute, follow its controlling authority, and rule that the elements clause claims here, which is all that's in the motion, are untimely. Thank you. Judge Carnes, I've been giving some thought to your inquiry. This is the rule that I would propose the court set forth in looking back at the original sentencing hearing. First, if the judge declared reliance on the elements clause, then of course we have not met our burden. Secondly, if the parties litigated the elements clause, some clause other than residual clause, maybe there were objections to the PSR, maybe the probation officer used the elements clause in drafting her PSR, maybe there were sentencing memorandums filed on the elements clause issue, then we can reasonably presume the district court chose that path even if she didn't speak those words. Third, if there's an 11th Circuit binding opinion on that topic. My binding? What if there's just an opinion and that's the only opinion? What's the binding part? Well, if it was not a published opinion on point, then it would not, as I say, bind the district judge, and we don't know if the judge would have felt obligated to follow that since . . . You're giving me arguments for some . . . What I'm asking you is along the lines of what Judge Edmondson said, which is let's assume that you are not going to prevail in your view that just saying Johnson, it could have been, maybe it was, is going to get you there. You've still got to prove your case. To prove your case, you may want to go to circumstances. What I'm trying to get at and be candid with you, having done this for twenty-two years on the district court, and maybe everybody was different from me, but until this camps, I don't know that I ever even thought about the residual clause. I think every case I ever did, and I was thoughtful about every case, was elements or enumerated crimes. I can't . . . And so, to me, this camps was a real watershed ruling. And in the year 2009, we didn't have a divisibility principle from the Supreme Court, so I'm guessing Judge Murphy in 2009, divisibility never occurred to him. And also in 2009, we didn't have Curtis Johnson's use of force. I'm thinking Judge Murphy and no other judge was thinking about that at that particular time. And in fact, Judge Murphy, in deciding this case on 2255, went through the elements analysis with the benefit of his camps in Mathis, and he still thought elements applied, which suggests strongly to me that back in 2009, when he didn't have the only cases you have to offer, that would have been a basis for him to rule. And all of those things really trouble me in trying to draw an inference that he was relying only on the residual clause. It seems very improbable. I'm being candid of what I'm thinking to give you a chance to tell me why I may be wrong. In Mr. Beeman's originally sentencing hearing, Judge Murphy could have relied on both. He had two options in front of him. He didn't tell us which one he thought carried the day. But if he could have relied on both, I think you might lose if we take the test I've articulated, because those would be independent grounds. So he would have been wrong about the residual, but the elements clause, back then you can't challenge your time barred on that. We can't look at that. Well, if the district court has relied on both, if it's possible he relied on the residual clause, that's enough to press the Johnson claim. Now, the district court then should evaluate the merits of that claim, the elements clause issue, as Judge Murphy did below. The first discussion in his order was on this question we're having here of whether we get in the door. But then he went on to evaluate the merits nonetheless. That should have been the only pillar that he evaluated in this motion. I see that my time is up unless the court has more questions. It seems that the circuit has not, we have more and we have chance, and there's not been a published definitive discussion, and I'm sure this is in your briefing. Can you tell us of any other circuits that have discussed this and what their opinion is as far as your access to relief? One circuit has issued a published opinion on this topic, the Fourth Circuit in U.S. v. Winston. You'll find it in my Rule 28J letter that I filed a couple of weeks ago. And in that case, the Winston court weighed these arguments between the Moore and the Chance panels and voted with Chance. In the district courts, the vast majority of district judges in making this same evaluation have sided with Chance. So in the courts where these are working out in practice, they are continually voting with Chance. Thank you. Thank you, Mr. Dodge. All right. I'm sorry. I'm done. I think I'm mucking up your side. We're going to break before the fourth. Did you hear that we're disabled? Do you need a break now? No. No. Okay. All right. We call the case of Jacqueline Stevens v. the Attorney General of the United States. Give us a second, Mr. Brown, so everybody can settle down. Thank you.